This morning is number 15-5141 D'Angiolini v. HHS. Mr. Kringle. May it please the court. In evaluating these vaccine cases, I think it's important to look at the congressional intent and the cases that have interpreted the meaning of what the Vaccine Decided. The words that are used are awards that are being made quickly, easily, with certainty and generosity, a fair, simple, and easy way to administer, and preponderance of the evidence is defined as 50% and a feather. Mr. D'Angiolini's case is the antithesis of congressional intent and what case law has held. It's been 17 years, protracted litigation, and I would submit that the Special Master elevated the burden of proof that was impossible to meet in this case. The Special Master specifically forgot the imperative dictative often, that is, the purpose of the Vaccines Act's preponderance standard is to allow the finding of causation in a field bereft of complete and direct proof of how vaccines affect the human body. But the Special Master held that he failed, your client failed, to establish that he suffered from a medical condition at all. Yes, that's exactly what he held, and in particular, what I want to zero in on is the finding that he did not establish chronic fatigue syndrome, CFS. That's a question of fact, right? No, that is not a question of fact when you elevate the burden. Once you elevate the burden and make it impossible to find that, then it's not a question of fact, it's a question of law. In particular, the law that he found was, and the way he set it up was, if you do not know the etiology of CFS, which is true, like many of the vaccines and the illnesses and maladies that come before this court, then you can't prove your case. That's not what often held. That is turning it or theory of burden of proof actually contradicts with the statute. In particular, section 3AA13, subparagraph small a to capital A, which specifically, and now this part of the statute pertains to respondents' burdens once the burden shifts, but it says you cannot include any idiopathic, unexplained, unknown, hypothetical, undocumentable cause to deny a petitioner bond and cannot use an idiopathic, an unknown reason, then a special master certainly can't make our burden that high. The special master also ignored capizana, which the court recognized that in the absence of direct proof, the role of circumstantial evidence and probative value statements to treating physicians containing medical records is extremely important. And moreover, Knutson holds to require identification and proof of specific biological mechanisms would be inconsistent with the purpose and nature of the vaccine compensation program. And that is exactly what he wanted. But the problem isn't that the special master records specific proof of a connection between chronic fatigue syndrome and the vaccination. It's that the special master found, based upon a lot of evidence, that he didn't suffer from chronic fatigue syndrome at all. And that is an error, and I'll tell you why. You had two experts here testifying. This is where you're on an evidence question, right? No, I'm on an admission level. When you have the testifying experts, both Dr. Schoenfeld for me and Dr. Lightfoot for the respondent. You think the government has conceded that he has chronic fatigue syndrome? Yes. Well, here's the quote. I suspect that they're going to disagree with you. Well, they can, but here's the quote. I hope I don't ruin this case for you. This was on direct. He was not under duress by me under cross-examination. He prefaces his remarks by saying, I hope I don't ruin this case for you, and talks about a couple other facts. I think that was the beginning of his chronic fatigue syndrome. Albeit, he says it was secondary to depression, but I can argue that one separately. If that isn't a concession or admission by the government... It isn't. Why not? Don't ask the court questions. Pardon me? You don't ask the court questions. No, no, no. I'm sorry. You should be. It was a rhetorical question. I don't know what more could be an admission. Because you're taking it out of context, counsel. I looked it up. All right. I respectfully disagree. Dr. Lightfoot further conceded he was first diagnosed with chronic fatigue syndrome by Dr. Bach on October 10, 1998. He further, under questioning by the special master, acknowledged that the fatigue he suffered was comparable and would characterize as chronic fatigue syndrome. Not to mention, we have five treating physicians that diagnosed my client with CFS as a result of the Hepatitis B vaccine, as well as Dr. Schoenfeld. Rhetorically, I ask, what more does one have to prove, considering the dictates of Alton, Andrew, Katsana, all of these cases that outline how one has to prove these cases? If you have five treating physicians, and I would still say there was a concession by Dr. Lightfoot, that's it. The special master's findings of fact, these even, and I accept 99% of them. What I find arbitrary and capricious in this regard is that he ignored his own findings of fact or failed to apply those findings of fact to the law. He found that Mr. DeAngelini suffered no physical ailments before the vaccines. He found that he had no fatigue or chronic fatigue before the vaccines. A month and a half before he had his first vaccine, he was given a pre-employment exam, cleared to work, he held two jobs, he had normal blood tests. Everything that the special master found would clearly indicate, when you go to causation or what he had, that he was functioning perfectly well and he was functioning in two jobs. Then we can look at the Alton criteria. A reliable theory causally connecting the vaccine to the injury. By definition, a theory is an idea that is suggested or presented as possibly true, but it is not known or proven to be true. Again, if the starting point that there is no medical knowledge of the cause of CFS, I can't prove my case. I can't prove it. Compare that with the holding of Andrew, which held that the first prong can be satisfied when a medical theory is propounded by medical experts with highly relevant academic credentials and specific field expertise such as those presented by Dr. Schoenfeld as prima facie evidence of biologic plausibility. The special master even admits or acknowledges that the aluminum adjuvant theory in this case does have biologic plausibility. In fact, it's not a novel concept. It was first derived by Garrardi in his work on microphagic myofasciitis, and the theory posits that the aluminum in the vaccine becomes deposited in the muscle, which disrupts muscle fiber and causes fatigue. Therefore, I would submit that that prong of health often was resolved. Second prong, a logical sequence of cause and effect, showing that the vaccine was the reason for the injury. Here, again, according to Capizano, treating doctors' opinions are favored for the second prong. Again, the special master's findings of fact concluded there was no prior diagnosis, signs, symptoms, or treatment of CFS. And again, the case law of Andrew and Moberly guide us that the treating physicians are in the best position to determine whether a logical sequence of cause and effect shows the vaccine is the reason for the injury. Five treating doctors diagnosed him. Third prong, approximate temporal relationship between the vaccine and CFS. The case laws also hold that evidence in one prong can be used to satisfy another prong. In this case, we have three vaccines, and we have five doctors saying the CFS was caused by the vaccine. I think from a logical viewpoint, if you find causation, one must also find an approximate temporal relationship. Because if you don't have a proximate temporal relationship, you can't have causation. Dr. Schoenfeld testified that he would expect symptoms, it's not diagnosis, it's symptoms, to develop within weeks to months of the vaccine. Last year, the case of Pollock versus HHS also found that that particular time frame was acceptable when talking about vaccines and their ill effects. Remember, CFS is a diagnosis of exclusion. You have to have six months of fatigue before you even get to the diagnosis, and you have to eliminate other causes. So that's why, in this case, when you have nothing ahead of time, it's a much better model. All right, all those in favor? Thank you, Mr. Kringle. Ms. Perlman. Good morning. May it please the court. With all due respect to my counsel, I very much disagree that whether or not Mr. DeAngelini has... Let me tell you the one thing that bothers me. Sure. And that is, for a diagnosis of CFS, you have to have four out of six symptoms. Four out of eight. Four out of eight, right. And apparently, the special master concluded that there was a possibility that he had three of them after the vaccine, but that he dismissed the evidence that he had three others because those symptoms predated the vaccine. Am I summarizing it correctly? Kind of. Part of the definition for the ancillary criteria is that ancillary symptoms could not have predated the fatigue. So you have to use the fatigue, the chronic fatigue, the serious fatigue, as the starting point. The other symptoms, the ancillary symptoms, have to have come after. So the three particular symptoms that the special master identified all preceded not just the chronic fatigue, but preceded the vaccine. But see, that's, I mean, that seems to me kind of odd to say that because somebody had some symptoms earlier, they can't have chronic fatigue, even if they had all the... even if they had all eight symptoms. Coincident with the episode, or whatever you want to call it. I mean, is that... Where is the diagnostic criterion in the record here? It is the TAN criteria. It is an appendix to the special master's decision, and it begins on page A205. 205. And goes through A207. Your Honor, to be clear, we're not talking about chronic fatigue, the general symptom. We are talking about a very specific syndrome. Chronic fatigue syndrome. It has diagnostic criteria that there was no question in this case that that is the criteria that we... Okay, so but where does it say here, where does it deal with the question of pre-existing? If you... turn to page 207, under major classification categories, subsection 2, the chronic occurrence of four or more of the following symptoms, and it says, all of which must have persisted or recurred during six or more consecutive months of illness and must not have predated the fatigue. Seems like a very odd requirement. Well, it's the requirement that Feduka and his colleagues at the CDC came up with for this particular condition. It is the condition that petitioner is alleging that he has. So this is the criteria that has been used. And there was no question throughout the proceedings that this was the criteria that petitioner was trying to achieve in order to prove that he has chronic fatigue syndrome. Okay. As your honor indicated... I'd like you to address, please, the Whitefoot statement. And specifically, I want you to discuss his testimony found later in the record. Sure. Starting at 1346. Sure. The statement that counsel discussed, I think we have to be very clear what the question was first. The question was, doctor, this is at page 27 of appellant's briefing. Yeah. Doctor, what is your opinion about when Mr. DeAngelini's chronic fatigue syndrome started if we were to assume he has chronic fatigue syndrome? So at the very outset, the question is predicated on an assumption that Mr. DeAngelini, in fact, has chronic fatigue syndrome. So... As I said, it was out of context. I agree with that. Another problem with this statement is that Dr. Whitefoot's answer says, yes, he uses the word chronic fatigue syndrome. It is our position that he misspoke when he said syndrome after chronic fatigue. And I think it was secondary to his depression primarily. Chronic fatigue syndrome is a diagnosis of exclusion. And chronic fatigue is certainly a symptom of depression. But he's also asked to presume that it exists. In this case, yes. But then go on to his separate testimony. Yes. Which part in particular? A1346 at C, where he's testifying about it. Because I want that nailed down. I'm sorry? I want it nailed down. And I want it nailed down because I, as I said, you're opposing counsel. I thought he was making a misrepresentation. And I agree. Yes. So chronic fatigue syndrome, irritable syndrome, and fibromyalgia are all included in sort of a Venn diagram relationship where they overlap. Some people only have one. Some people have two or three of those. And what the clinicians try to do is to find the disease and treat it and get rid of the fatigue. And he goes on. And that is why the special master gave so much weight to one of the treating physicians, Dr. Norris. She actually looked at the chronic fatigue syndrome criteria and concluded that he does not have chronic fatigue syndrome. Again, there is no doubt that there are certain places in the record where a diagnosis of chronic fatigue syndrome is present. But there was no basis given for why it was that these doctors came to this conclusion. There's no evidence they held it up against the criteria. And during the testimony, Dr. Vasey, who is one of the people who said he had chronic fatigue syndrome, admitted that his sole reason for saying that he had this diagnosis was because that Mr. DeAngelini was chronically fatigued, period. Nothing to do with the ancillary criteria. It would have been better if the government lawyer examining Dr. Lightfoot had asked him to clear up what he meant by that. In hindsight, I agree with you, Your Honor. We had four days of very long testimony. And I'm sure, looking back, there are questions we wish we had asked. But I believe that the evidence in this case is vast, Your Honor. The significant thing, it seems to me, about Dr. Lightfoot is he wasn't an expert in chronic fatigue syndrome. Nor was Dr. Vasey or Dr. Schoenfeld. I think that was a deficiency on all parts. But it is petitioner's burden to prove by preponderant evidence that he has the conditions that he is alleging is vaccine-related. He did not do that. And the special master gave multitude of reasons why. It is a factual finding. It is of substantial deference by this court's precedent. I think in a 106-page decision, it would be hard to find that he did not fully evaluate all of the evidence. He weighed the evidence. Well, he didn't mention this evidence as the problem. It would have been good if he'd done that, too. I agree. I will say that in over 1,500 pages of transcript, the first time this paragraph was pointed out was at this court's during briefing. It was not pointed out during post-hearing briefing or during briefing for the Court of Federal Claims. So I don't know why it was not picked out earlier. But it wasn't. And I believe, as Judge Wallach said, it was taken out of context. If there are no further questions, we respectfully request that you affirm the special master's decision. Thank you, Ms. Perlman. Mr. Kringle? First of all, I'd like to apologize to Judge Wallach. My advocacy got the best of me, and it came out. I would take- That's accepted. Thank you. I would disagree about taking this out of context. Again, and I hate- I don't want to beat a dead horse, but when an expert says in response to a- Is it true that you didn't point this out to the special master in the briefing? That is correct. So it doesn't give him an opportunity to address it then, really. There were other areas where I disputed his finding of CFS from day one. Not finding CFS, lower court, this court, special master. All of it going back to, essentially, his finding that if there's no ideology of CFS, then you've presented a heightened burden towards- But when you ask somebody- This is what bothers me about this, in addition to his later testimony. Or actually, earlier testimony. But when you ask someone to assume that the patient has something, and he says, well, okay, he has it, you've just asked him to assume it. And I think it's out of context when you argue it that way. The only thing I can respond to that is, you're dealing with an expert who has testified quite a bit in this court. And when he responds with a prefatory comment that, I hope I don't ruin this case for you, well, everyone's ears start picking up. He's not talking about ruining the case for the government. Well, he is, because it was direct exam. This wasn't me asking, it was direct exam. So the case he was ruining, arguably, was the government's case. And then he starts talking about chronic fatigue syndrome. It has to start at some point in time. They're not born with it. I believe this was clearly starting in him with these stories of non-restorative sleep. Even in spite of sleeping for 10 hours, he was not rested. He had suicidal ideation before the vaccines ever came along. I think that was the beginning of his chronic fatigue syndrome. And I think it was secondaries to his depression. I mean, that's a direct answer. That's not an assumption. Yeah, but I'll tell you what your problem is. I mean, even if you interpret this testimony the way you do, first of all, he's not an expert in chronic fatigue syndrome. And second of all, there's other evidence that cuts the other way. And that's what fact finders are supposed to do, is to weigh the evidence. And the special master found against you, and it looks as though there's substantial evidence, plenty of evidence to support his finding that he wasn't suffering from chronic fatigue syndrome, even if you accept the characterization of a lightfoot testimony the way you characterize it. Well, there are, again, five treating physicians that held that he had chronic fatigue syndrome as a result of the hepatitis B vaccine. Well, they opined. Huh? They opined. Yes, they opined. And that's, based on the case law, what I think as advocates we have to rely upon. You gather up, hopefully, your treating physicians. They come forward. Your experts come forward. You present it. And the trier effect gets to observe the demeanor of the witnesses? No question about it. But again, this was one portion of this. I still go back to the special masters, in essence, beginning and end of the discussion. Because if you say there's no etiology to chronic fatigue syndrome, you've basically elevated my burden in contradiction of often to that which cannot be provable. No etiology, I can't win. Nor can anyone else if that's the burden. Thank you very much. Okay. Thank you, Mr. Cronin. I'll thank both counsel. The case is submitted and concludes our session.